**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Maakestad and Lisa Maakestad, husband and wife,<br><br>    Plaintiffs<br><br>vs.<br><br>Mayo Clinic Arizona dba Mayo Clinic Scottsdale, an Arizona corporation; Lori Ann Deceglia, an individual; and Pamela Miller, an individual,<br><br>    Defendants. | No. CV-04-2183-PHX-DGC<br><br><br>**ORDER** |

Defendants have filed a motion for summary judgment. Doc. #85. Plaintiffs have filed a response and Defendants have filed a reply. Docs. ##87, 94. For the reasons set forth below, the Court will grant the motion in part.[1]

**I.    Background.**

Defendants are Mayo Clinic Arizona and two of its employees, Lori Ann Deceglia and her supervisor, Pamela Miller.[2] James Maakestad began his employment with Defendant

---

[1] The Court will deny the request for oral argument because the parties have submitted memoranda thoroughly discussing the law and evidence and the Court concludes that oral argument will not aid its decisional process. *See Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999).

[2] Lori Ann Deceglia changed her name to Lori Ann Rodriguez in May 2005. Doc. #87.

1  Mayo Clinic in December 1999 and was transferred in January 2000 to the Patient Financial
2  Services department where he was supervised by Defendant Deceglia. Maakestad was
3  terminated on June 28, 2004.

4  The Maakestads commenced this action by filing a complaint against Defendants on
5  October 14, 2004. Doc. #1. On November 3, 2004, James Maakestad committed suicide.
6  The current Plaintiffs, the Estate of James Maakestad and Lisa Maakestad (James's widow)
7  filed an amended complaint on May 3, 2005. Doc. #17. The amended complaint asserts
8  sexual harassment, gender discrimination, and retaliation claims under Title VII of the Civil
9  Rights Act of 1964, as amended, 42 U.S.C. § 2000e, and an Arizona state law claim of
10 intentional infliction of emotional distress (IIED). Doc. #17.

11 **II.    Summary Judgment Standard.**

12 Summary judgment is appropriate if the evidence, viewed in the light most favorable
13 to the nonmoving party, "shows that there is no genuine issue as to any material fact and that
14 the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see*
15 *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The disputed evidence must be
16 "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v.*
17 *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

18 **III.   Plaintiffs' Sexual Harassment Claim.**

19 Plaintiffs allege that James Maakestad was subjected to sexual harassment from his
20 supervisor, Defendant Deceglia, during his employment with Mayo Clinic. Defendants argue
21 that Plaintiffs (1) have failed to establish a claim for sexual harassment because the alleged
22 acts are not sufficiently severe or pervasive, and (2) cannot offer enough admissible evidence
23 to support these claims.

24 **A.     Evidentiary Issues.**

25 In support of this claim, Plaintiffs offer the written harassment complaints made by
26 James Maakestad to Mayo Clinic management and the deposition testimony of Lisa
27 Maakestad. Doc. # 36. Defendants argue that this evidence is inadmissible hearsay under
28 the Federal Rules of Evidence. Docs. ##85, 94. In response, Plaintiffs do not dispute that

- 2 -

1 Lisa Maakestad's deposition is hearsay. Plaintiffs do contend, however, that James
2 Maakestad's written harassment complaints are admissible under the "present sense
3 impression" and "then existing mental, emotional, or physical condition" exceptions to the
4 hearsay rule. Fed. R. Evid. 803(1), (3).

5 The Court does not agree. Plaintiffs' proffered exceptions to the hearsay rule do not
6 apply to James Maakestad's out-of-court statements. Under Federal Rule of Evidence
7 803(1), evidence is not precluded as hearsay if it is a "statement describing or explaining an
8 event or condition made *while the declarant was perceiving the event or condition, or*
9 *immediately thereafter.*" (Emphasis added.) Rule 803(3) makes admissible,

> a statement of the declarant's *then existing* state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), *but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.*

13 (Emphasis added.)

14 Plaintiffs offer two documents written by Maakestad to his Mayo Clinic supervisors.
15 Docs. ##88-89, Exs. 12-13. Both are dated February 2004 and concern problems Maakestad
16 allegedly had with Deceglia six months earlier. Neither is contemporaneous to the alleged
17 incidents; both are statements of memory that do not qualify under these exceptions to the
18 hearsay rule.

19 Plaintiffs also suggest that statements made during a 911 call on the night of
20 Maakestad's suicide are admissible under the "statement under belief of impending death"
21 hearsay exception. Fed. R. Evid. 804(b)(2). Docs. ##87-89. While the call might qualify
22 under this exception, Plaintiffs offer no transcript of the call as evidence. The record
23 includes only Lisa Maakestad's statement to police at the scene of the suicide that James was
24 "upset over problems at work" and a hearsay description of the 911 call in a subsequent
25 psychiatric autopsy. Docs. ##87-89, Exs. 42-43.

26 Plaintiffs' only admissible evidence is the deposition testimony and an email of
27 Maakestad's co-worker, Deborah Parker, which will be addressed below. Plaintiffs'
28 response also refers to the deposition testimony of Pamela Julian and George Kuzara as

1  potential witnesses, but they cite no supporting documentation for this assertion and provide
2  no transcript of the deposition testimony. Doc. #87 at 10.

### B.     Hostile Work Environment Standard.

A plaintiff may establish a violation of Title VII by proving that discrimination created a hostile work environment. *See Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 66 (1986). To prevail on a hostile work environment claim based on sex, a plaintiff must show that (1) he was subjected to sexual advances, requests for sexual conduct, or other verbal or physical conduct of a sexual nature, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001); *Faragher v. City of Boca Raton*, 524 U.S. 775, 786-88 (1998); *Vasquez v. County of L.A.*, 349 F.3d 634, 642 (9th Cir. 2004); *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000) ("A hostile work environment claim involves a workplace atmosphere so discriminatory and abusive that it unreasonably interferes with the job performance of those harassed.").

The Ninth Circuit has held that "the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991) (citing *King v. Bd. of Regents of Univ. of Wis. Sys.*, 898 F.2d 533, 537 (7th Cir.1990)); *see Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864 (9th Cir. 2001) (holding that to prevail on a hostile environment sexual harassment claim, an employee is required to establish a *pattern* of ongoing and persistent harassment) (citing *Meritor Sav. Bank*, 477 U.S. at 66-67).

The only admissible evidence on this issue consists of testimony and an email from Deborah Parker. Parker testified that Deceglia, while in Maakestad's office, "put her hands on her behind, turn[ed] around and said to him, 'Do you think my ass is too big?'" Docs. ##88-89 ¶ 7, Ex. 7 at 79-80. Parker's email to James Maakestad said "I have heard Lori Ann say inappropriate sexual things to you and to others. I wonder if she thinks she is above reproach?" *Id.*, Ex. 8.

Although a jury clearly could view the incident in Maakestad's office as offensive, it was a single event. The email does not identify what was said by Deceglia, when, or how often. Given this limited evidence, the Court concludes that no jury reasonably could find that Defendants engaged in conduct "sufficiently severe or pervasive to alter the conditions of [Maakestad's] employment and create an abusive work environment." *Clark County Sch. Dist.*, 532 U.S. at 270. Summary judgement accordingly will be granted to Defendants. *See Kortan v. Cal. Youth Auth.*, 217 F.3d 1104 (9th Cir. 2000) (holding that no triable issue existed as to whether one occasion of offensive conduct was frequent, severe, or abusive enough to interfere unreasonably with Plaintiff's employment).

**IV.    Plaintiffs' Discrimination Claim.**

Plaintiffs contend that Maakestad was treated differently from other employees in his department, including being disciplined for things others were permitted to do.[3] Specifically, they claim that Maakestad was disciplined for having his shoes off and using an electric blanket at his desk, while other female employees were not disciplined for similar policy violations. Doc. #87 at 14. Plaintiffs offer the deposition testimony of Deborah Parker to support this allegation. Docs. ##88-89 ¶ 44, Ex. 4.

To show disparate treatment under Title VII, the plaintiff must first establish a prima facie case of discrimination. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Specifically, a plaintiff must show that (1) he belongs to a protected class, (2) he was capable of performing his job, (3) he was subjected to an adverse employment action, and (4) similarly situated people of the opposite gender were treated more favorably. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)). The Ninth Circuit "has explained that under the *McDonnell Douglas* framework, 'the requisite degree of proof necessary to establish a prima facie case for Title VII on

---

[3]Plaintiffs also claim that Maakestad was demoted because of his "deep male voice." Doc. ##88-89 ¶ 45, Ex. 5. This claim, however, is supported only by the inadmissible hearsay testimony of Lisa Maakestad.

- 5 -

1  summary judgment is minimal and does not even need to rise to the level of a preponderance
2  of the evidence.'" *Id.* (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994));
3  *see Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998).

4        Defendants do not dispute that Maakestad was a member of a protected class,
5  qualified for his position, or subjected to an adverse employment action. They argue that
6  Plaintiffs cannot show that "[Maakestad] was treated differently on the basis of his protected
7  status." Doc. #85 at 9. (citing *Godwin*, 150 F.3d 1217)). Specifically, Plaintiffs assert that,
8  "[w]hile Ms. Parker's testimony admittedly may create an 'issue of fact' as to whether Mr.
9  Maakestad was treated differently, Ms. Parker does not, and cannot, offer any evidence to
10 establish that James Maakestad was treated differently *because of his gender*[.]" *Id.*
11 (emphasis added). To make a prima facie showing under the *MacDonnell Douglas* analysis,
12 however, Plaintiffs must only offer evidence that similarly situated women were treated more
13 favorably. *See Godwin*, 150 F.3d at 1220. Such evidence gives rise to an inference of
14 gender discrimination. Indeed, Defendants acknowledge that a "plaintiff can establish a
15 *prima facie* case of discrimination either through direct evidence *or by producing evidence*
16 *that creates an inference of discrimination*." Doc. #85 at 9 (emphasis added).

17       Defendants assert that Parker's testimony provides no evidence that women were
18 treated more favorably than Maakestad. This is not correct. Parker testified that "[h]e would
19 take his shoes off under his desk, like every other woman in that department takes off their
20 shoes under their desk. He was reprimanded for it." Docs. ##87-89 ¶ 44, Ex. 4 at 40. Parker
21 asserted in a letter of complaint, as confirmed in her deposition, that "[w]e have several
22 female employees that for years have been running equipment off of electricity at their desk;
23 for example heaters, lights and fountains. Yet when James brought in an electric blanket,
24 there was immediate turmoil." *Id.* at 64. This evidence satisfies the minimal level of proof
25 required in this Circuit for elements of the prima facie case, including the fourth – that female
26 employees were treated more favorably. As this is the only argument raised by Defendants,
27 summary judgement will be denied as to this claim.

28

## V.     Plaintiffs' Retaliation Claim.

Title VII "prohibits retaliation against an employee 'because he has opposed any practice made an unlawful employment practice'" by Title VII. *Nelson v. Pima Cmty. College*, 83 F.3d 1075, 1082 (9th Cir. 1996) (quoting 42 U.S.C. § 2000e-3(a)). A plaintiff makes a prima facie case of unlawful retaliation by producing evidence that (1) he engaged in or was engaging in an activity protected by Title VII, (2) the employer subjected him to a material adverse action, and (3) there was a causal link between the protected activity and the adverse action. *See Burlington N. & Santa Fe Ry. Co. v. White*, No. 05-259, 2006 WL 1698953, *10 (S. Ct. June 22, 2006); *Vasquez* 349 F.3d at 642.

If the plaintiff makes a prima facie case, the burden of production shifts to the defendant to present a legitimate, non-retaliatory reason for the material adverse action. *See Brooks*, 229 F.3d at 928. If the defendant carries this burden, the plaintiff "must demonstrate a genuine issue of material fact as to whether the reason advanced by the [defendant] was a pretext." *Id*.

Plaintiffs claim that Defendants retaliated against Maakestad for reporting violations of state and federal law. Doc. #36. Defendants argue that Plaintiffs fail to establish a prima facie retaliation claim because they cannot prove the requisite casual link between the Maakestad's complaints and subsequent adverse employment actions. Doc. #95. Defendants also argue that even if a prima facie case is made, Plaintiffs cannot provide evidence of pretext to rebut Defendants' legitimate non-retaliatory reasons for their decisions. Plaintiffs assert that Maakestad was disciplined and ultimately terminated for a history of performance problems, security concerns, and violations of company policies. *Id.* Plaintiffs maintain that there is a genuine issue of fact as to whether the adverse employment actions taken by Mayo were pretextual and retaliatory. Doc. #87.

Construing the facts in favor of the nonmoving party, Plaintiffs have established their prima facie case. Maakestad's complaints to his supervisors and the EEOC constitute protected activity; he was later subjected to material adverse actions including a job transfer, suspension, physical and psychological evaluations, demotion, and termination; and a causal

1 connection may be inferred by the temporal nexus between his protected activity and the
2 adverse employment actions – for example, four to six weeks between Maakestad's sexual
3 harassment complaint and his transfer and evaluation. *See Passantino v. Johnson,* 212 F.3d
4 493, 507 (9th Cir. 2000) (holding that when adverse employment actions are taken within a
5 reasonable amount of time after discrimination complaints have been made, retaliatory intent
6 may be inferred); *Yartzoff v. Thomas*, 809 F.2d 1376, 1371 (9th Cir. 1987) (holding that
7 sufficient evidence of causation existed where adverse employment action occurred less than
8 three months after the protected activity).

9 Defendants have carried their burden of production by articulating legitimate,
10 nondiscriminatory reasons for the adverse employment actions. Plaintiffs thus bear the
11 burden of showing a genuine issue of material fact as to whether the reasons are pretextual.
12 *See Yartzoff*, 809 F.2d at 1377. To show pretext, Plaintiffs are "not necessarily required to
13 introduce evidence beyond that already offered to establish [their] prima facie case." *Miller*
14 *v. Fairchild Indus., Inc.*, 797 F.2d 727, 732 (9th Cir. 1986); *see Yartzoff*, 809 F.2d at 1377
15 ("Evidence already introduced to establish a prima facie case may be considered, and
16 'indeed, there may be some cases where the plaintiff's initial evidence, combined with
17 effective cross-examination of the defendant, will suffice to discredit the defendant's
18 explanation.'") (citation and alteration omitted); *Strother v. S. Cal. Permanente Med. Group*,
19 79 F.3d 859, 870 (9th Cir. 1996) ("The same evidence can be used to establish a *prima facie*
20 case *and* to create a genuine issue regarding whether the employer's explanations are
21 pretextual.") (emphasis in original). "Temporal proximity between protected activity and an
22 adverse employment action can by itself constitute sufficient evidence of retaliation in some
23 cases." *Bell v. Clackamas County*, 341 F.3d 858, 865 (9th Cir. 2003); *see Stegall v. Citadel*
24 *Broad. Co.*, 350 F.3d 1061, 1069 (9th Cir. 2004) ("We recently reaffirmed that the timing
25 of adverse employment action can provide strong evidence of retaliation.") (citing *Bell*, 341
26 F.3d at 865); *Passantino*, 212 F.3d at 507 ("[W]e have held that evidence based on timing
27 can be sufficient to let the issue go to the jury, even in the face of alternative reasons
28 proffered by the defendant.") (citing *Strother*, 79 F.3d at 870-71).

Maakestad orally complained of harassment to Deceglia's supervisor Bernadette Cote in late 2003, to Deborah Miller on January 20, 2004, and filed a sexual harassment complaint with Mayo Clinic Human Resources on February 11, 2004. He was reprimanded on March 8, 2004, demoted and ordered to undergo psychiatric and physical evaluation on March 23, placed on administrative leave on March 29, and again reprimanded on April 12. He complained of retaliation on April 26 and was placed on unpaid suspension on June 2 and ultimately fired on June 28. The temporal proximity between Maakestad's discrimination complaints and the multiple adverse actions he suffered create a reasonable inference that Defendants' motives were retaliatory. *See Yartzoff*, 809 F.2d at 1377 ("[W]e believe that the fact that Yartzoff experienced not one, but a series of adverse employment decisions during a two-year period is itself probative of pretext and thus of the 'elusive factual question' of intentional discrimination[.]"); *Strother*, 79 F.3d at 870-71 (holding that the temporal proximity between the plaintiff's complaints and several adverse actions supported a reasonable inference of the defendant's retaliatory motive); *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1287 n.10 (9th Cir. 2001) (same). Summary judgment on the retaliation claim will be denied. *See Miller*, 797 F.2d at 732-33 ("Courts have recognized that in discrimination cases, an employer's true motives are particularly difficult to ascertain, thereby making such factual determinations generally unsuitable for disposition at the summary judgment stage. Because we conclude that Fairchild's true reasons for laying off Miller and Lewis present an 'elusive factual question,' that is incapable of resolution on summary judgment, we hold that the trial court erred in dismissing the [retaliation] cause of action."); *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000) ("As a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment. This is because 'the ultimate question is one that can only be resolved though a searching inquiry – one that is most appropriately conducted by the factfinder, upon a full record.'") (quoting *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996)).

**VI.  Plaintiffs' Intentional Infliction of Emotional Distress Claim.**

Plaintiffs contend that Defendants subjected Maakestad to unwanted sexual advances, harassment, and a subjectively hostile work environment by exposing him to touching, sexually explicit remarks, and innuendos. Doc. # 36. They argue that Defendants should have known this behavior would humiliate, embarrass, and emotionally distress Maakestad. *Id.* Defendants argue that the claim does not survive his death under the Arizona survival statute, A.R.S. § 14-3110. Doc. #85. They also argue that Plaintiffs have failed to make a prima facie showing of IIED, and Lisa Maakestad has no valid IIED claim on these facts. *Id.*[4]

To recover on an IIED claim in Arizona, a plaintiff must prove that (1) the defendant's conduct was extreme and outrageous, (2) the defendant either intended to cause emotional distress or recklessly disregarded the near certainty that distress would result from the conduct, (3) the conduct caused the plaintiff to suffer emotional distress, and (4) the emotional distress was severe. *See Lucchesi v. Stimmell*, 716 P.2d 1013, 1015-16 (Ariz. 1986) (citing *Watts v. Golden Age Nursing Home*, 619 P.2d 1032, 1035 (Ariz. 1980)); *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987).

Regarding the first element, a plaintiff "may recover for [IIED] only where the defendant's acts are 'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Patton v. First Fed. Sav. & Loan Ass'n of Phoenix*, 578 P.2d 152,

---

[4] In their response, Plaintiffs seek to amend their complaint to add a claim under Arizona's wrongful death statute, A.R.S. § 12-612(A). Doc. #87. This attempt is untimely. Discovery is closed and the deadline for motion practice has long since passed. Moreover, the deadline for amending pleadings in this case was July 25, 2005 (90 days after the April 25, 2005 Case Management Order). Plaintiffs' request to amend, included in their response to Defendants' motion, was filed long after this deadline, on March 13, 2006. Plaintiffs must demonstrate "good cause" to modify a deadline in the Case Management Order. Fed. R. Civ. P. 16(b). Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. *See Johnson v. Mammoth Recreation, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Plaintiffs do not address the good cause or diligence requirements, and provide no explanation for why amendment could not have been sought earlier in this case. Accordingly, their request to add a wrongful death claim by amendment will be denied.

1  155 (Ariz. 1978) (quoting *Cluff v. Farmers Ins. Exch.*, 460 P.2d 666, 668 (Ariz. 1969); *see*
2  *Cummins v. Mold-In Graphic*, 26 P.3d 518, 528 (Ariz. Ct. App. 2001); Restatement (Second)
3  of Torts § 46 cmt. d (1965). "It is for the court to determine, in the first instance, whether
4  the defendant's conduct may reasonably be regarded as so extreme and outrageous as to
5  permit recovery, or whether it is necessarily so." *Lucchesi*, 716 P.2d at 1016.

6  Here, the only admissible evidence offered by Plaintiffs is the single offensive
7  question asked by Deceglia and Parker's non-specific email suggesting that inappropriate
8  sexual comments were made to Maakestad in the past. No reasonable jury could find from
9  this limited evidence that Defendants' behavior rose to the extreme level of egregiousness
10 required for an IIED claim.

11 To the extent that Lisa Maakestad has also raised an IIED claim, the claim cannot
12 survive summary judgment. In addition to the very limited nature of the evidence as
13 discussed above, Plaintiffs have offered no evidence to support an independent IIED claim
14 on Ms. Maakestad's behalf. Specifically, there is no evidence to establish intent, causation,
15 or injury with respect to her. Defendants' motion for summary judgment on all IIED claims
16 will be granted accordingly.[5]

17 **IT IS ORDERED:**

18 1.  Defendants' motion for judgment (Doc. #85) is **granted in part** and **denied**
19 **in part** as set forth in this order.

20 2.  The Court will set a final pretrial conference by separate order.

21 DATED this 12th day of July, 2006.

*/s/ Daniel G. Campbell*
—————————————————
David G. Campbell
United States District Judge

---

[5] Given this conclusion, the Court need not address the survivability of the IIED claim after James Maakestad's death or whether Lisa Maakestad has standing to assert such a claim.

- 11 -